# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:17-cv-00527-MR

| | |
|---|---|
| TONY BERNARD ADAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner of Social ) <br> Security ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I.  PROCEDURAL BACKGROUND

The Plaintiff, Tony Bernard Adams ("Plaintiff"), asserts that his status post gunshot wound to the left side, neuropathy, blindness in the left eye, hypertension, major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, obesity, and history of substance abuse constitute severe mental and physical impairments under the Social Security Act (the "Act") rendering him disabled.  On November 7, 2013, the Plaintiff

filed an application for supplemental security benefits under Title XVI of the Act, alleging an onset date of April 2, 2012. [Transcript ("T.") at 233]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 126, 133]. Upon Plaintiff's request, a hearing was held on May 13, 2016, before an Administrative Law Judge ("ALJ"). [Id. at 40]. Present at the hearing were the Plaintiff, the Plaintiff's attorney, and a vocational expert ("VE"). [Id.]. On June 14, 2016, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 18-33]. On August 8, 2016, the Plaintiff requested that the Appeals Council review the ALJ's decision. [Id. at 228-232]. On June 29, 2017, the Appeals Council denied the Plaintiff's request for review [Id. at 1], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security

Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof,

which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative

5

work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV.   THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged date of onset, November 7, 2013. [T. at 20]. At step two, the ALJ found that the Plaintiff has severe impairments including status post gunshot wound to the left side, neuropathy, blindness in the left eye, hypertension, major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, obesity, and history of substance abuse. [Id. at 21]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 21]. Specifically, with respect to paragraphs B and C of listing 12.05, the ALJ found:

As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. As discussed below, while one provider assessed an IQ score of 55, other testing showed an IQ score of 72. Given the claimant's activities of daily living, which include living alone for years and engaging independent personal care, the undersigned finds that the score of 72 is more reliable and more likely to be accurate.

Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As stated above, the claimant was assessed an IQ score 72. Given the claimant's activities of daily living, which include living alone for years and engaging in independent personal care, the undersigned finds that his borderline intellectual functioning did not prevent him from employment. He denied any special education when he was in school. He maintained employment that he was able to obtain on his own and perform without special accommodations. Indeed, while there has been no evidence of a change in his intellectual functioning, the claimant engaged in substantial gainful activity for many years.

[Id. at 24]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

[T]o perform light work as defined in 20 CFR 416.967(b), except he can perform work that allows for no vision on one side, occasional depth perception, field of vision, and acuity; he can engage in frequent overhead reaching with the left upper extremity; he must avoid concentrated exposure to

7

> hazards; he can perform simple, routine, repetitive tasks in a stable environment at a non-production pace with occasional interpersonal interaction.

[Id.].

At step four, the ALJ held that the demands of Plaintiff's past relevant work exceed his RFC and Plaintiff is, therefore, unable to perform any past relevant work. [Id. at 31-32]. At step five, based on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including garment folder, hand packer, and machine tender. [Id. at 33]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act, since November 7, 2013, the date the Plaintiff filed his application. [Id.].

## V.  DISCUSSION[1]

In his sole assignment of error, the Plaintiff contends the ALJ erred at step three. Specifically, the Plaintiff argues that the Plaintiff's intellectual impairment meets paragraphs B and C of listing 12.05 and that the ALJ should, therefore, have found Plaintiff to be disabled.

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

Listing 12.05 relates to intellectual disability.  Pursuant to listing 12.05, intellectual disability "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 ("§ 12.05").  To meet listing 12.05, a claimant must (1) show deficits in adaptive functioning that initially manifested before age 22, and (2) meet the requirements of either paragraph A, B, C, or D of the listing.  Id.; see Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).  To meet the paragraph B requirements, a claimant must show "[a] valid, verbal, performance, or full scale IQ of 59 or less."  § 12.05B.  To meet the paragraph C requirements, a claimant must show "[a] valid, verbal, performance, or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work-related limitation of function."  § 12.05C (emphasis added).

"The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series."  § 12.05D(6)(c).  Identical IQ scores obtained from different tests, however, do not always reflect a similar degree of intellectual functioning due to variables in the tests themselves, such as differing means and standard

deviations. Id. As such, "IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank" so that the ALJ "can determine the actual degree of limitation reflected by the IQ scores." Id. See Jones v. Apfel, No. CV-99-6227-ST, 2000 WL 1456907, at *12 (D. Oregon 2000) (applying § 12.05D to find that "[i]n instances where other tests are administered, it would be necessary to convert the IQ to the corresponding percentile rank in the general population in order to determine the actual degree of impairment reflected by those IQ scores").

Here, the ALJ concluded that the Plaintiff did not meet paragraphs B or C of listing 12.05 because the 55 IQ score was not valid and other records indicated an IQ score of 72. The ALJ specifically rejected the IQ of 55, finding the score of 72 to be "more reliable and more likely to be accurate," based on other evidence in the record. [T. at 24]. The Plaintiff argues that this finding is not supported by substantial evidence.

"An ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). An ALJ may reject an IQ score in the record if the evidence he considers provides sufficient support for the rejection. Id. at 475 (citing Lowery v. Sullivan, 979 F.2d 835, 837

10

(11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior.")).

The record evidence in this case shows that on May 4, 2010, the Plaintiff underwent a psychological evaluation, which included a Wechsler Adult Intelligence Scale ("WAIS") IQ test, which is part of the Wechsler series. The Plaintiff's full scale IQ score was reported as 55. [Id. at 614]. The corresponding Psychological Evaluation report provides, "[t]est scores indicate cognitive, academic, and psychomotor functioning in the extremely-low range that is consistent with his history of receiving special education classes throughout his academic career." [Id. at 615]. At this time, the Plaintiff was diagnosed with mild mental retardation. [Id.].

Other records in the evidence considered by the ALJ, however, conflict with these findings. When the Plaintiff was incarcerated in February of 2004, he underwent Beta IQ testing, which revealed a score of 72. [Id. at 91]. The record, however, lacks any further detail regarding this testing or the Plaintiff's score. Namely, the Court has no information regarding what test was employed, how it was administered, how the score correlates to a score from the Wechsler series, or why the ALJ weighed this test more heavily than the more recent test.

11

The ALJ failed to develop evidence or make any findings regarding the significance of the Beta IQ score of 72. The IQ scores in listing 12.05 are specifically based on the Wechsler series. Therefore, a score on a different standardized test does not necessarily equate with the same score on the WAIS for the purpose of satisfying the listing. See Jones, 2000 WL 1456907, at *12. The ALJ needed evidence from which to determine the actual degree of limitation reflected by the Beta IQ score of 72. § 12.05D(6)(c).

To do this, the ALJ should have developed evidence regarding whether the Beta test administered on the Plaintiff deviated from a mean of 100 and a standard deviation of 15. Id. If the evidence required the ALJ to convert the Plaintiff's Beta score and the ALJ failed to do so, then the ALJ's conclusion that the Plaintiff did not meet the paragraph B or C criteria was error. For instance, if a Beta score of 72 equates to an Wechsler series score of 59, then the paragraph B criteria may have been satisfied.

To satisfy the requirements of any paragraph of listing 12.05, a claimant also must show he has deficits in adaptive functioning that initially manifested before age 22. The ALJ, however, made no findings in his decision regarding the Plaintiff's deficits in adaptive functioning. [See T. at 24]. Accordingly, if the ALJ determines that a Beta score of 72 equates to a score that meets the criteria of paragraphs B or C, then the ALJ would also

need to make findings regarding whether the Plaintiff has deficits in adaptive functioning that initially manifested before age 22.

As such, this case must be remanded for the ALJ to collect evidence as to what a Beta IQ test means and how a score on that test compares to a score on the WAIS. If on remand the Plaintiff's converted Beta score falls within the paragraph B or C criteria, then the ALJ must make findings on the other paragraph B or C criteria, as appropriate. In the alternative, if the ALJ were to determine that the Plaintiff did not have deficits in adaptive functioning that initially manifested before age 22, then none of the paragraphs of listing 12.05 could be satisfied, in any event.

Additionally, the ALJ's finding that the Plaintiff did not have a physical or other mental impairment imposing a work-related limitation of function is not supported by substantial evidence. [See T. at 24]. The Fourth Circuit has held that a claimant's "inability to perform his prior relevant work alone establish[es] the significant work-related limitations of function requirement of section 12.05(C)." Luckey v. U.S. Dept. of Health & Human Services, 890 F.2d 666, 669 (1989) (citing Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir. 1985)). This limitation of function requirement is also met where the ALJ finds that the Plaintiff has some other severe impairment or combination of impairments. Id. (citing 20 C.F.R. §§ 404.1520(c), 404.1521 (a)). Here, at

step two, the ALJ found that the Plaintiff had other severe mental and physical impairments and, at step four, that the Plaintiff could not perform his past relevant work. [T. at 21, 31]. As such, the ALJ's finding on this issue was error.[2]

## VI. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ shall develop evidence and make findings regarding the Plaintiff's Beta IQ score, as more fully set forth in this opinion and, if necessary, make findings regarding Plaintiff's deficits in adaptive functioning and work-related functional limitation as appropriate under listing 12.05.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**. Pursuant to the power

---

[2] The Court also notes the ALJ's redundant but inconsistent analysis of paragraphs B and C of listing 12.05. [See T. at 23-24]. The ALJ first attempted to analyze paragraphs B and C based on the requirements of the listings for other mental impairments, not for 12.05. [Id. at 23]. Specifically, the ALJ analyzed the paragraph B criteria for other mental impairments – activities of daily living, social functioning, and concentration, persistence or pace – as if these are the paragraph B criteria for listing 12.05. They are not. Then, the ALJ discussed "paragraph C" criteria relative to "episodes of decompensation" and the Plaintiff's ability to "function outside of a highly supportive environment." [Id.]. The ALJ then proceeded to address the correct paragraph B and C criteria for listing 12.05, which are assessed in this opinion. [Id. at 24]. While the Plaintiff did not assign error to the ALJ's set of findings on the wrong paragraph B and C criteria, this error needs to be corrected on remand.

of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: August 21, 2018

Martin Reidinger
United States District Judge